UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

SON THANH TRAN

CRIMINAL ACTION

NO. 15-170-JJB-RLB

**RULING ON MOTION TO SUPPRESS**

This matter is before the Court on a Motion to Suppress (Doc. 12) brought by the defendant, Son Thanh Tran ("Tran"). The United States of America ("the Government"), filed an opposition (Doc. 18). The Court conducted a suppression hearing on February 25, 2016. For the reasons stated herein, the defendant's Motion to Suppress (Doc. 12) is **DENIED**.

**I.   BACKGROUND**

In August 2011, a Baton Rouge Police Department ("BRPD") narcotics detective, Detective Jeff Pittman ("Det. Pittman"), submitted an affidavit for search warrant to the 19th Judicial District Court, which issued a search warrant for the defendant's business. *Aff. Search Warrant*, Doc. 12-1. Pursuant to the search warrant, BRPD officers searched the defendant's business and seized a firearm and illegal synthetic cannabinoids known as "Mojo." *Govt's Opp'n* 2, Doc. 18. After agents administered *Miranda* rights to Tran, he waived his rights and made inculpatory statements regarding the synthetic cannabinoids and possession of the firearm. *Id.* at 2–3. Tran was subsequently charged with three counts of possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and two counts of felon in possession of a firearm in violation of 21 U.S.C. § 922(g)(1).[1] *See Indictment* 1–2, Doc. 1.

---

[1] Although the grand jury returned an indictment against the defendant involving criminal conduct in 2011, 2013, and 2014, the defendant only challenges the evidence seized during the 2011 incident, which concerns only Counts 1–3 of the five Count indictment. *See Def.'s Mot. Suppress* 2, Doc. 12.

1

Tran moves to suppress all items seized and any inculpatory statements made pertaining to the search warrant, arguing that the evidence should be suppressed because the affidavit submitted by Det. Pittman in support of the search warrant is insufficient to establish probable cause. *Def.'s Mot. Suppress* 1, Doc. 12. The relevant portion of the affidavit provides:

> Affiant says that he has probable cause to believe that the above-listed thing(s) to be seized are now concealed and located upon the above described premises, based upon the following facts:
> Within the past 24 hours the affiant was contacted by a previously proven reliable confidential informant (C.I.) who's information has led to the seizure of narcotics, monies, arrests and convictions in the past. The C.I. advised that an asian male was selling synthetic cannabinoids from the grocery mart at 3918 Sherwood St. Baton Rouge, La. These cannabinoids are sold in the form of exotic potpourri and are listed in Schedule I as being illegal. Most establishments in Baton Rouge have removed said products from display and sale, but the aforementioned grocery mart, which has AMY printed on the outside, and a clearly marked address of 3918 Sherwood St. continues to sell the Schedule One CDS. In order to confirm the C.I.'s information the affiant decided to conduct a controlled purchase of a quantity of purported synthetic cannabinoid from 3918 Sherwood St. with the use of the C.I. Prior to making the purchase the C.I. was searched for money and contraband of which neither were found. The C.I. was then given a quantity of B.R.P.D. Narcotics funds of which the serial numbers had been previously recorded (1B08093488E). The C.I. was monitored visually by the affiant for safety purposes. The C.I. was observed entering the grocery mart at 3918 Sherwood St. A short while later the C.I. exited the business and met with the affiant at a predetermined location. The C.I. then surrendered packets of Matrix Exotic Potpourri which the affiant recognized as being synthetic cannabinoid seized in previous investigations that led to arrests. The C.I. was again searched for money and contraband of which neither were found. The C.I. advised that a stocky asian male, approx. 35-40 years of age, with short hair and glasses, was contacted at the cash register. The C.I. advised the asian male that the C.I. wished to purchase "MoJo". "MoJo" is a common term for the synthetic cannabinoid. The asian male then removed packets of Matrix Exotic Potpourri from a display and the C.I. handed the asian male the Narcotics funds. The asian male then placed the money in the cash register and handed the C.I. the suspected synthetic cannabinoid. No receipt was given to the C.I. The C.I. then left the business. A B.R.P.D. records check revealed that a/m Son Tran (08/17/1970, 5'8" 212 lbs.) works, manages or owns the business and fits the description given by the C.I. Tran has a previous criminal history of conspiracy to distribute cocaine base in which he was sentenced in Federal court.

*Aff. Search Warrant*, Doc. 12-1.

2

## II. DISCUSSION

When a search warrant is involved, courts employ a two-step process to evaluate a defendant's motion to suppress. First, the court must determine whether the *Leon* good faith exception to the exclusionary rule applies. *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999) (citing *United States v. Leon*, 468 U.S. 897 (1984)). If the good faith exception does not apply, then the court proceeds to the second step in the analysis and determines whether the warrant was supported by probable cause. *United States v. Froman*, 355 F.3d 882, 888 (5th Cir. 2004). If the good faith exception applies, however, the Court need not evaluate probable cause. *Id.*

The *Leon* good faith exception provides that evidence is admissible when it is obtained by law enforcement officials acting in objectively reasonable good faith reliance upon a search warrant, even if the affidavit on which the warrant was based was insufficient to establish probable cause. *See* 468 U.S. at 922–23; *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988). Due to the "strong preference for warrants," the issuance of a warrant by a magistrate "normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant." *Leon*, 468 U.S. at 914, 922.

An officer will not be able to claim objective good faith when, among other reasons, the underlying affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)). These "bare bones" affidavits are ones that "contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 320–21 (5th Cir. 1992); *Illinois v. Gates*, 462 U.S. 213, 239 (1983) (stating that the affidavit must supply the

magistrate with sufficient information "to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others").

Whether an affidavit is a bare bones affidavit is determined under the totality of the circumstances. *See United States v. Fisher*, 22 F.3d 574, 578 (5th Cir. 1994). Such a determination examines the veracity, reliability, and basis of knowledge of a confidential informant, and the information within the affiant's personal knowledge. *Satterwhite*, 980 F.2d at 320–21. For example, an affidavit is bare bones when it merely states the affiant received reliable information or that the affiant believes contraband will be found in a certain location, without further explanation or corroboration. *Aguilar v. Texas*, 378 U.S. 108, 109 (1964), *abrogated on other grounds by Illinois v. Gates*, 462 U.S. 213 (1983) (holding that an affidavit was bare bones when it stated that the affiants "have received reliable information from a credible person and do believe" that heroin was stored in a home); *Nathanson v. United States*, 290 U.S. 41, 44 (1933) (holding that an affidavit was bare bones when it stated that the affiant "has cause to suspect and does believe" that liquor illegally imported is located on certain premises); *United States v. Barrington*, 806 F.2d 529, 531–32 (5th Cir. 1986) (holding that an affidavit was bare bones when it merely stated that the police officer "received information from a confidential informant" who is "known to [to the officer] and has provided information in the past that has led to arrest and convictions"). On the other hand, an affidavit is not bare bones if it describes the facts and circumstances by which the affiant corroborated a C.I.'s tip. *Satterwhite*, 980 F.2d at 320–21 (holding that an affidavit was not bare bones when the affiant stated that the C.I. had personally accompanied a third person to an apartment for the purpose of buying drugs, and the C.I. observed the third person enter the apartment and return carrying drugs); *see Gates*, 462 U.S. at 242 ("An officer 'may rely upon information received through an informant, rather than upon his direct observations, so long

4

as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.'").

In a factually similar case, *United States v. Foy*, the Fifth Circuit held that an affidavit that described a single controlled buy, conducted by a C.I. and supervised by the affiant officer, was sufficient to establish the officers' good faith. 28 F.3d 464, 473–74 (5th Cir. 1994). In *Foy*, officers received a tip from a C.I. that drugs were being sold out of a particular apartment, and the officers arranged a controlled buy of two rocks of cocaine. *Id.* at 466. The officers searched the informant, supplied him with marked twenty dollar bills, and observed him enter the apartment where drugs were allegedly being sold. *Id.* While under police surveillance, the informant entered the apartment, stayed 5–10 minutes, and returned to a prearranged location where he gave the officers two rocks which he stated were crack purchased at the apartment. *Id.* The C.I. also stated that the rocks were purchased in the presence of a woman named Dickinson. *Id.* The officers used a field test to verify that the substance the informant returned with was cocaine, and also verified that the apartment utilities were in Dickinson's name. *Id.* The Fifth Circuit rejected the argument that the affidavit was bare bones, stating that the abovementioned facts in the affidavit were sufficient for a "reasonable officer" to "properly conclude that these facts sufficed to establish probable cause." *Id.* at 474.

In the instant case, Det. Pittman provided the magistrate with more than a bare bones affidavit because the affidavit conveys the facts and circumstances from which the magistrate could independently determine probable cause. The facts and circumstances described in the affidavit are much more than Det. Pittman merely stating that he had received reliable information from a credible person and believed that illegal synthetic cannabinoids would be found in the grocery mart. *Aguilar*, 378 U.S. at 109; *Nathanson*, 290 U.S. at 44. On the contrary, the affidavit

5

describes the facts and circumstances within the personal knowledge of Det. Pittman that tends to corroborate the C.I.'s story. *Satterwhite*, 980 F.2d at 320–21; *see Gates*, 462 U.S. at 242.

Like the affidavit in *Foy*, the affidavit in this case describes officers receiving a tip from a C.I. that illegal drugs were being sold at a particular location. The affidavit goes on to describe the officers conducting a controlled buy of drugs from the suspected location. Like *Foy*, prior to entering the grocery mart, Det. Pittman searched the C.I. for money and contraband, and found none. Det. Pitman then observed the C.I. enter the grocery mart, and upon returning to a prearranged location, the C.I. produced a substance that Det. Pittman recognized as being synthetic cannabinoids previously seized in investigations that led to arrests. The affidavit also states that the C.I. gave a description of the man working the cash register, which Det. Pittman verified matched the description of the owner of the grocery mart contained in BRPD records. Based upon these facts personally known to Det. Pittman, the corroboration of the C.I.'s story was sufficient to establish the C.I.'s veracity, reliability, and basis of knowledge. Also, like *Foy*, using the facts provided in the affidavit, the magistrate would be justified to draw reasonable inferences that under the totality of the circumstances, a search would uncover evidence of illegal synthetic cannabinoids.

The defendant argues that the affidavit was based on uncorroborated, generalized information, which "amounts to only suspicion, speculation, and affirmance of belief" that the items being sold at the grocery mart were illegal narcotics. *Def.'s Supp. Mem.* 2–3, Doc. 12-2. Unlike *Foy*, the product purchased by the C.I. was not tested to determine if it was an illegal narcotic prior to requesting the search warrant. According to the defendant, in the absence of such a test prior to applying for the search warrant, the affidavit contains "[o]nly suspicion the contents of the packages may contain a controlled substances." *Id.* at 2–3. Although a pre-warrant test to

6

determine if the substance was an illegal synthetic cannabinoid would be more probative than an officer's statement that he recognized a substance as illegal narcotics, the information required in the affidavit need not prove guilt beyond a reasonable doubt.[2] *United States v. Brown*, 941 F.2d 1300, 1303 (5th Cir. 1991) (per curiam). The other facts contained within the affidavit, including a tip that was corroborated by a controlled buy and the C.I. stating that he asked for and received "Mojo"—a common term for illegal synthetic cannabinoids—from the cashier at the grocery mart, were sufficient for the magistrate to conclude that, under the totality of the circumstances, a search would uncover evidence of wrongdoing. *Id.* at 1303, 1305. Therefore, reliance on the search warrant was objectively reasonable, and according to the *Leon* good faith exception, the evidence seized by the officers is admissible.

Having concluded that the *Leon* good faith exception applies, the Court need not address whether the warrant was sufficient to state probable cause. *See Froman*, 355 F.3d at 888.

### III. CONCLUSION

For the reasons stated above, the defendant's Motion to Suppress (Doc. 12) is **DENIED.**

Signed in Baton Rouge, Louisiana, on March 28, 2016.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[2] The affidavit need only provide the magistrate with a substantial basis for concluding that, under the totality of the circumstances, a search would uncover evidence of wrongdoing. *United States v. Brown*, 941 F.2d 1300, 1303, 1305 (5th Cir. 1991) (per curiam). A magistrate must be allowed to draw reasonable inferences from the affidavit, and the ultimate determination of its adequacy is entitled to great deference on review. *United States v. May*, 819 F.2d 531, 535 (5th Cir.1987).