UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS

SON THANH TRAN                              NO. 15-00170-BAJ-RLB

### RULING AND ORDER

Defendant pleaded guilty to one count of unlawful possession of a firearm by a convicted felon, and now faces mandatory deportation after he finishes his 65-month sentence, due to the fact that he is not a U.S. citizen. Defendant did not appeal his case. Now, however, Defendant seeks to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, asserting that counsel failed to inform him of the "potential for deportation," among other claims. (Doc. 118, the "Motion"). The Government opposes Defendant's Motion. (Doc. 137). For reasons below, Defendant's Motion will be denied.

## I.  BACKGROUND

Beginning on September 6, 2013, law enforcement agents made multiple controlled purchases of synthetic marijuana from Joker Novelty ("Joker"), a Baton Rouge-area store where Defendant worked. (Doc. 102 at ¶¶ 9-13). Based on these purchases, agents sought and obtained a search warrant for Joker, which they executed on September 10, 2013. (*Id.* at ¶ 13). When agents entered Joker to conduct the search, they immediately "observed numerous individuals inside … attempting to purchase synthetic marijuana" from multiple employees, including Defendant. (*Id.* at ¶ 14). Additionally, when conducting the search, the agents "located several boxes

of synthetic marijuana throughout the store":

> Approximately nine boxes were located in the storage room, and several other boxes were located under the display counter and under a register. A total of 4,969 packs of synthetic marijuana were located throughout the store.

(*Id.* at ¶ 15). Finally, agents discovered a loaded firearm—a Baretta semi-automatic pistol—located next to a digital scale. (*Id.* at ¶ 16).

On December 2, 2015, the Grand Jury returned a five-count Indictment, which, most relevant here, charged Defendant with one count of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), based on the Baretta recovered from the September 10, 2013 search. (Doc. 1 at p. 2 (Count IV). The Indictment also charged Defendant with three counts of possession with intent to distribute synthetic marijuana, in violation of 21 U.S.C. § 841(a)(1), for different conduct allegedly occurring on August 11, 2011 (Counts I, II) and April 7, 2014 (Count V), and an additional count of unlawful possession of a firearm by a convicted felon, also for conduct allegedly occurring on August 11, 2011. (*Id.* at pp. 1-2).

On December 7, 2015, Defendant made his first appearance and pleaded not guilty to all charges. (Doc. 9). The Government did not move for Defendant's detention, and Defendant was released on bond pending trial. (*Id.*).

In the ensuing months, Defendant filed multiple motions tolling the time limits set forth under the Speedy Trial Act, 18 U.S.C. § 3161, including a motion to suppress evidence obtained pursuant to search warrant (Doc. 12); a motion to reconsider the Court's denial of Defendant's motion to suppress (Doc. 28); and a motion to dismiss

Count V of the Indictment (Doc. 42). (*See also* Docs. 26, 34, 45).

Beginning in March 2017, Defendant took steps towards pleading guilty to at least some of the offenses set forth in the Indictment. On March 7, 2018, the Government submitted its first notice of Defendant's intent to plead. (See Doc. 47). Three weeks later, the Government withdrew this notice, stating that it was "based on a misunderstanding" with Defendant's counsel. (Doc. 49 at ¶ 2; Doc. 50).

On March 30, 2017, the Government filed its second notice of Defendant's intent to plead. (Doc. 51). This notice did not immediately result in Defendant's re-arraignment, however, due to the unfortunate illness and untimely passing of the presiding Judge, the Hon. James Brady. On December 21, 2017, after Judge Brady's passing, Defendant's case was re-assigned to this Section. (Doc. 52).

On January 31, 2018, the undersigned conducted a status conference and set Defendant's re-arraignment for March 9, 2018. (Doc. 57). Two days before the hearing, however, Defendant reversed course and filed a motion to continue trial, stating "Movant does **not** intend to formally plead guilty … but desires to go to trial." (Doc. 58 at ¶ V (emphasis in original)). The Court converted Defendant's March 9 re-arraignment hearing to a status conference to discuss Defendant's change-of-heart, and thereafter granted Defendant's motion, re-setting trial for May 16, 2018. The Court also set an evidentiary hearing for April 6, 2018, to finally resolve Defendant's motion to dismiss Count V (which remained pending). (Doc. 61).

Just three days later, Defendant reversed course again. On March 12, 2018,

Defendant filed his Request/Motion For Re-Arraignment Date (Doc. 62), stating that after the March 9 status conference he conferred with counsel and "determined very quickly he did not want to withdraw his Plea Agreement and desired to be re-arraigned." (Doc. 62 at ¶ II). The Court granted Defendant's motion, and re-set Defendant's re-arraignment to March 19, 2018.

On March 19, 2018, Defendant appeared for his rearraignment, to plead guilty to Counts IV (unlawful possession of the Baretta on September 10, 2013) and V (possession with intent to distribute synthetic marijuana on April 7, 2014), pursuant to the terms of a written plea agreement. (Doc. 65, 66). Notably, Defendant's plea agreement admitted to the three controlled purchases of synthetic marijuana from the Joker in September 2013, and the fact of the resulting warrant and search that yielded the Barretta. (Doc. 66 at pp. 5-6). Defendant affirmed these facts (under oath) at his rearraignment hearing. (Doc. 93 at p. 47)

Significantly, Defendant's March 19 rearraignment hearing also revealed—for the first time—that Defendant is not a U.S. citizen. This fact came to light as the Court engaged Defendant in a colloquy to determine his ability to proceed in English, without the aid of a Vietnamese-language interpreter[1]:

> **The Court:** All right. And so you have had no problems in your day-to-day contact with others that you've encountered using and speaking the English language, correct?

---

[1] Based on the colloquy, the Court found that Defendant was competent to proceed in English, without the aid of an interpreter. (Doc. 93 at p. 52 ("The Court: … Now just so that the record is clear: I further find that the Defendant is sufficiently proficient in the English language.")).

**The Defendant:** Yes.

**The Court:** All right. Very good.

**Mr. Bourland [Defendant's counsel]:** If I may interrupt. He also became a United States citizen.

**The Court:** All right. Very good. So you are now a citizen; is that right, Mr. Tran?

**The Defendant:** I'm not a citizen.

**Mr. Bourland:** I'm mistaken, your honor. I thought he had told me he had become a citizen.

**The Court:** Okay. All right, well, thank you.

(Doc. 93 at pp. 8-9).

Given the significant immigration consequences that could result from counsel's oversight, the Court returned to the issue of Defendant's citizenship later in the same hearing. Specifically, the Court queried Defendant's counsel regarding whether Defendant knew of the potential "immigration consequences as a result of this plea." (Doc. 93 at pp. 41-44). In response, Defendant's counsel admitted that he had "operated under the belief that [Defendant] was a citizen," and, thus, had not inquired regarding the potential immigration consequences. (*Id.*). Based on this response, the Court deferred accepting Defendant's plea, to allow counsel to "explore the immigration implications of these convictions":

> **The Court:** ... Mr. Bourland, I'm going to ask you to look into that matter. I will not accept the plea agreement today. As you know, it's typically not my practice to do so until the sentencing hearing, but I will not at this time even accept the guilty plea at this time. We will continue with the colloquy, but in the meantime, what I'm going to ask you to do, just so that the record is clear, I'm going to ask you to please further

> explore the immigration implications of these convictions on the
> Defendant. After you do so and so inform the Court, I will then again
> engage in a colloquy with Mr. Tran to satisfy myself that he is fully
> aware of the possible immigration consequences, and that despite that
> he still intends or wishes to plead guilty, okay?

(Doc. 93 at p. 43). Thereafter, the Court conditionally set sentencing for July 19, 2018,
stating again that the Court's acceptance of Defendant's plea was contingent on
counsel's investigation of "the immigration consequences of his pleading guilty
today." (*Id.* at p. 53). The Court ordered the U.S. Probation Office to prepare a
presentence investigation report (PSR), continued Defendant's pre-trial release, and
adjourned. (*See* Doc. 65).

On June 6, 2018 the Probation Office issued Defendant's original PSR. (Doc.
69). Consistent with the facts revealed at Defendant's March 19 re-arraignment
hearing, the original PSR noted that Defendant is a Vietnamese citizen whose
immigration status is "unknown." (Doc. 69 at p. 3). Further, the PSR noted multiple
prior drug convictions (*id.* at ¶¶ 45-46), and multiple prior encounters with U.S.
Customs and Border Protection, including one that resulted in an April 13, 2000 Final
Order of Removal, (*id.* at ¶¶ 50-51).

After the Probation Office issued the PSR, Defendant's counsel obtained
multiple continuances of Defendant's sentencing date to ascertain and advise
Defendant of the immigration consequences of his plea. (*See* Docs. 70, 71, 72, 73, 76,
77, 80, 81). These efforts *included* engaging the services of an immigration attorney—
Kenneth A. Mayeaux—who, for his part, sought and obtained documentation of

Defendant's immigration status from U.S. Customs and Border Protection. (Doc. 72 at ¶¶ IV-V; Doc. 76 at ¶¶ IV-VI).

Counsel's investigation of Defendant's immigration status yielded a clear result: Defendant would be deported upon conviction of any drug or gun offense, including those that were the basis of his March 19 plea. Accordingly, on February 11, 2019 (four days before Defendant's sentencing hearing), Defendant submitted a Motion To Withdraw Plea Of Guilty, citing the fact of Defendant's "automatic deportation" upon pleading guilty to Counts IV and V:

> Movant engaged additional counsel for the purpose of determining his immigration status in light of a felony conviction in the instant matter. After a thorough investigation on behalf of Movant by such counsel, with the Immigration Services of the Federal government, it was determined automatic deportation would occur upon release from Federal custody with the Bureau of Prisons, in spite of the fact Immigration has never placed a detainer in behalf of the United States Customs and Immigration Service. This is so even though Movant, through special counsel representing him in the USCIS inquiry, has apprised USCIS of the pending plea to the aforementioned counts of the current Indictment.

(Doc. 86 at ¶ II).

The Court continued sentencing, and set a hearing for April 22, 2019 to address Defendant's Motion to Withdraw. (Doc. 87). At this hearing, Defendant's counsel affirmed that he had fully investigated the matter with the assistance of Mr. Mayeaux, and had determined that Defendant would be deported if he pleaded guilty to *any* drug or firearm offense. Counsel further stated that had he known of this fact before Defendant entered March 19 plea, he would *not* have advised Defendant to

plead guilty.   When asked to respond, the Government indicated that it agreed with defense counsel's assessment, and did not oppose Defendant's Motion to Withdraw. The Court granted Defendant's motion, and re-set trial for June 17, 2019. (Doc. 95).

And again Defendant reversed course. On June 11, 2019, the Government submitted its fourth (and final) notice of Defendant's intent to plead guilty. (Doc. 96). This time Defendant would plead guilty to just Count IV (unlawful possession of the Baretta) pursuant to a new plea agreement executed on June 12, 2019. (Doc. 98). Notably, in this second plea agreement, Defendant again admitted to the fact of the September 10, 2013 search of the Joker that yielded the firearm, "[a]mong other things." (Doc. 98 at p. 4).

Additionally, the June 12 plea agreement waived Defendant's trial rights (including his right to a speedy trial), *and* Defendant's right to appeal, *except* that Defendant reserved the right to appeal any sentence that (i) exceeded the statutory maximum, (ii) represented an "upward departure" under the Sentencing Guidelines, or (iii) represented a "'variance' which is above the guidelines range calculated by the Court." (Doc. 96 at pp. 7-8). Defendant also reserved his right to pursue ineffectiveness of counsel claims in collateral review. (*Id.*).

In return, the United States agreed to dismiss Counts I, II, III, and V of the Indictment, and further agreed to move to reduce Defendant's offense level by "a third point for acceptance of responsibility," if the Court determined that Defendant was otherwise eligible for a two-point reduction under U.S.S.G. § 3E1.1(a). (*Id.* at p. 2).

8

On June 14, 2019, Defendant appeared for his second re-arraignment. (Doc. 99). This time, to avoid any possible confusion, the Court enlisted the services of a Vietnamese language interpreter. (Doc. 133 at p. 3). As before, Defendant was sworn (*id.* at p. 4), and, as before the Court engaged Defendant in an extended colloquy to ensure that he was competent to proceed, was pleading guilty voluntarily, understood the nature of the offense, and knew the consequences of his plea. (*Id.* at pp. 4-37).

As part of this colloquy, the Court inquired multiple times regarding Defendant's understanding of the "immigration consequences" of his plea. The first of these inquiries also involved Defendant's counsel:

> **The Court:** Now, I understand that Mr. Tran is not a United States citizen and that there may be some immigration consequences to his pleading guilty. Is that correct?

> **Mr. Bourland:** We did -- he has a green card, current and valid. We did engage Mr. Mayeux, if I'm pronouncing it correctly this time, at the Court's request as to provide additional information in that regard. And he was a great help, so we know -- we feel good about what we're doing today from the information he's provided to us in terms of his plea.

> **The Defendant:** Yes, sir.

> **The Court:** Now, Mr. Tran, have you heard and understood the questions that I've directed to your lawyer as well as his answers to my questions?

> **The Defendant:** Yes, I understand.

> **The Court:** Do you have any questions for me at this stage in our hearing, sir?

> **The Defendant:** No, sir.

9

> **The Court:** Let me ask you specifically: Do you fully understand, sir, that by pleading guilty you may face some immigration proceedings as a result of pleading guilty today? Do you understand that?
>
> **The Defendant:** Yes, sir.
>
> **The Court:** And it's still your desire to persist in your guilty plea in this case?
>
> **The Defendant:** Yes, sir.

(Doc. 133 at pp. 31-32). Later, after Defendant affirmed the factual basis set forth in the June 12 plea agreement (including the fact of the September 10, 2013 search), (Doc. 133 at p. 34), the Court again questioned Defendant regarding his understanding of the "immigration consequences":

> **The Court:** ...  Now, Mr. Tran, let me ask you again, sir: do you fully understand the charge contained in Count Four of the indictment as well as the elements of that offense as I have explained them to you?
>
> **The Defendant:** Yes, sir.
>
> **The Court:** And do you fully understand the consequences of your pleading guilty today, including the immigration consequences?
>
> **The Defendant:** Yes, sir.
>
> **The Court:** Are you pleading guilty, sir, because you are, in fact, guilty of the crime charged in Count Four?
>
> **The Defendant:** Yes, sir.
>
> **The Court:** And are you pleading guilty voluntarily and of your own free will?
>
> **The Defendant:** Yes, sir.

(Doc. 133 at p. 36). Based on Defendant's sworn statements, the Court accepted Defendant's plea, finding that it was based in fact, that Defendant was competent

and capable to proceed, and that Defendant entered the plea knowingly and voluntarily, fully "aware of the consequences of his pleading guilty today, including the immigration consequences." (*Id.* at pp. 36-37).[2] The Court set sentencing for September 19, 2019, and again released Defendant pending his sentencing hearing. (*Id.* at pp. 38-39).

On August 6, 2019, the Probation Office issued a revised PSR. (Doc. 102). The revised PSR again noted Defendant's Vietnamese citizenship, "unknown" immigration status, prior drug convictions, and prior Removal Order. (Doc. 102 at p. 2; *id.* at ¶¶ 39-40, 43-44). Additionally, the revised PSR set forth the facts surrounding Defendant's offense of conviction, including the controlled purchases of synthetic marijuana from Joker, the resulting warrant, the September 10, 2013 premises search, the 4,969 packs of synthetic marijuana located throughout the store, and the digital scale located next to Defendant's Baretta pistol. (Doc. 102 at ¶¶ 9-16).

The revised PSR determined that Defendant faced a maximum statutory term of 10 years' imprisonment under 18 U.S.C. § 924(a)(2), (*id.* at ¶ 73), and calculated a guideline imprisonment range of 70 to 87 months, based on a total offense level of 25 (including a 3-level reduction for acceptance of responsibility) and a criminal history category of III, (*id.* ¶¶ 28-37, 42, 74). Relevant here, Defendant's offense level included a 4-point enhancement for having possessed the Baretta "in connection with another

---

[2] The Court accepted Defendant's plea at the June 19 rearraignment, but again deferred accepting Defendant's plea agreement pending sentencing. (Doc. 133 at p. 37).

felony offense," (*id.* at ¶ 29). *See* U.S.S.G. § 2K2.1(b)(6)(B) (the "Felony Facilitation Enhancement").

On October 9, 2019—nearly four years after being indicted—Defendant finally appeared for sentencing. At this hearing, Defendant confirmed that he had received and reviewed the PSR, and had discussed its contents with counsel. Thereafter, the Court re-affirmed its findings that Defendant's plea was based in fact, knowing, voluntary, and with full awareness of the potential immigration consequences. Then, on the Government's motion, the Court reduced Defendant's offense level by an additional two points (to 23) pursuant to U.S.S.G. § 5K1.1, (Doc. 110, 111). Defendant's new (final) offense level (23) combined with his criminal history category (III) yielded a new (final) guidelines range of 57-71 months imprisonment.

Based on this recalculated guidelines range, the Court sentenced Defendant to a term of 65 months imprisonment, followed by 3 years supervised release. Thereafter, the Court accepted Defendant's plea agreement, advised Defendant of his appeal rights, dismissed the remaining counts set forth in the Indictment, and ordered Defendant to self-surrender to the Bureau of Prisons on November 11, 2019. (*See* Docs. 108, 112, 113, 115)).

Defendant did not pursue a direct appeal. On May 16, 2020, Defendant filed the instant *pro se* Motion, seeking to vacate his conviction and sentence under 28 U.S.C. § 2255. (Doc. 118). Liberally construed, Defendant's Motion asserts four claims: (1) Defendant's counsel was ineffective at the plea stage for having

"misadvised him of the potential for deportation" as a result of his guilty plea, (Doc. 118 at p. 6; *see also* Doc. 140 at p. 2); (2) Defendant's counsel was ineffective at the sentencing stage for having failed to offer Defendant "the opportunity to review and comment on the addendum to the presentence report," (Doc. 118 at p. 10; *see also* Doc. 140 at p. 5); (3) Defendant's counsel was ineffective at the sentencing stage for having failed to object to the 4-point Felony Facilitation Enhancement because all drug charges were dismissed, (Doc. 118 at p. 11; *see also* Doc. 140 at pp. 6-8); and (4) Defendant's guilty plea was obtained in violation of Defendant's right to a speedy trial, (Doc. 118 at pp. 7-8; *see also* Doc. 140 at pp. 2-5).[3] The Government opposes Defendant's Motion. (Docs. 137, 144). A hearing is not necessary.

## II.    LAW AND ANALYSIS

### A. Standard

Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). The statute sets

---

[3] Additionally, Defendant complains that counsel was ineffective for allowing him to be assigned to a BOP facility more than "500 miles from his home," creating a hardship for his family. (Doc. 140 at p. 8). This is not a cognizable basis for relief under Section 2255, because the BOP—*not* Defendant's counsel (or the Court)—is solely responsible for determining the location of Defendant's imprisonment. *See* 18 U.S.C.A. § 3621(b) ("Place of imprisonment.-- The Bureau of Prisons shall designate the place of the prisoner's imprisonment[.]"); *see also United States v. Voda*, 994 F.2d 149, 151-52 (5th Cir. 1993) ("[A] court may recommend that a sentence imposed under section 3621 be served in a particular prison or jail, but ... only the Bureau of Prisons has the actual authority to designate the place of incarceration. The Bureau of Prisons is given this responsibility because the executive branch and not the judicial branch is responsible for administering sentences." (citations omitted)).

forth four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the Court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Hill v. United States*, 368 U.S. 424, 426–27 (1962). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing." 28 U.S.C. § 2255(b).

A defendant seeking relief under Section 2255 must plead sufficient facts to establish a prima facie case of a constitutional violation. *United States v. Woods*, 870 F.2d 285, 287 (5th Cir. 1989). "[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* at 288 n.3.

Finally, and importantly, the defendant must show "actual prejudice" resulting from a constitutional violation in order to warrant relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). "Actual prejudice" occurs when the constitutional error "had substantial and injurious effect or influence" on the outcome of the proceeding. *See id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

### B. Discussion

#### 1. Speedy Trial

Defendant's speedy trial claims—constitutional *and* statutory—fail on multiple levels.

14

First, Defendant's statutory speedy trial claim is nonconstitutional and nonjurisdictional, and not cognizable in a Section 2255 proceeding. *United States v. Pina*, 184 F.3d 818, 1999 WL 499807 at *1 (5th Cir. 1999) (citing authorities).

Second, Defendant's constitutional speedy trial claim is defaulted, because Defendant could have raised it on direct appeal, but did not. Defendant offers no cause to excuse his default, much less any basis to conclude that he was prejudiced by the delay between his indictment and his guilty plea. *See United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) ("A defendant ... may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error."). Here, of course, any potential prejudice is substantially mitigated by the fact that Defendant was released on bond during the entirety of the proceedings against him.

Finally, Defendant's constitutional speedy trial claim is also waived by the plain terms of Defendant's plea agreement. Defendant has attempted to show that his plea was somehow rendered unknowing or involuntary because he did not understand that he was waiving his right to a speedy trial. *See United States v. Barnes*, 953 F.3d 383, 386 (5th Cir. 2020) ("A waiver is knowing and voluntary if the defendant knows that he has the right to collateral review and that he is waiving it in the plea agreement." (quotation marks omitted), *cert. denied*, 141 S. Ct. 438 (2020).

### 2. Ineffective Assistance Of Counsel

What remains are three claims of ineffective assistance of counsel. The Sixth

Amendment guarantees criminal defendants the "right to effective assistance of counsel at every critical stage of the proceedings against them." *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001). This right "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. at 5, 124 (2003).

The Court reviews claims of ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The Defendant must show: (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced his defense—*i.e.*, "there is a reasonable probability that but for counsel's poor performance the result of the proceeding would have been different." *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012). "Both of these prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

> Importantly, judicial scrutiny of counsel's performance must be highly deferential. When evaluating the first *Strickland* criterion, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Further, we must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (quotation marks and citations omitted).

### a. Counsel's alleged failure to advise Defendant of the "potential for deportation" upon pleading guilty

Defendant first claims that counsel was ineffective at the plea stage because he "misadvised him of the potential for deportation." (Doc. 118 at p. 6). Although not stated, Defendant implies that he would not have pleaded guilty had he known that he would ultimately be deported as a result. (*See id.*; *see also* Doc. 140 at p. 2).

"Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel," which includes competent advice regarding the potential immigration consequences of a guilty plea. *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010). If the immigration consequences of a plea can "easily be determined from reading the removal statute," and a defendant's "deportation [is] presumptively mandatory," counsel's performance is deficient if he fails to inform the defendant of the same. *See Padilla*, 559 U.S. at 368-69.

Defendant ultimately pleaded guilty to one count of unlawful possession of a firearm under 18 U.S.C. § 922(g)(1). Defendant's crime of conviction is plainly a deportable offense under the federal removal statute, 8 U.S.C. § 1227(a)(1)(C), and Defendant's counsel was obligated to inform Defendant of that fact. *See Padilla*, 559 U.S. at 360 ("We agree with Padilla that constitutionally competent counsel would have advised him that his conviction ... made him subject to automatic deportation.").

Here, certainly, Defendant's claim would be viable had the Court accepted Defendant's *original* plea. The record of the original (March 19, 2018) rearraignment

hearing is clear that counsel was unaware that Defendant is not a U.S. citizen, and had not advised Defendant of any potential immigration consequences.

But the record does not end in March 2018. Instead, upon learning of Defendant's status, the Court deferred acceptance of Defendant's plea to allow counsel the opportunity to investigate and inform Defendant of any potential "immigration consequences." In the ensuing months, counsel corrected his initial error, conducted a thorough investigation, determined that Defendant would face mandatory deportation as a result of pleading guilty to *any* drug or gun offense, and informed Defendant of the same. The results of counsel's investigation formed the sole basis of Defendant's February 11, 2019 Motion to Withdraw, which specifically stated that Defendant "would automatically be deported because of this conviction at the time of release from incarceration with the Bureau of Prisons." (Doc. 86-1 at p. 1).

Later, at Defendant's second (June 14, 2019) re-arraignment, the Court extensively questioned Defendant's counsel *and* Defendant regarding whether they understood the "immigration consequences" of Defendant's plea. (Doc. 133 at pp. 31-32, 136). Repeatedly, Defendant assured the Court that he knew of the consequences, yet still intended to plead guilty. (*See id.*). On this record, there is simply no basis to conclude that counsel failed to inform Defendant that he would be deported as a result of pleading guilty to unlawfully possessing a firearm.

Additionally, even if the Court assumes that counsel did *not* inform Defendant of the deportation risk, Plaintiff's claim still fails because Defendant has not made

*any* showing that he was actually prejudiced as a result. Again, it is Defendant's burden to establish his prima facie case. *Woods*, 870 F.2d at 287. Here, to carry his burden, Defendant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (quotation marks omitted). Defendant has not even attempted to make this showing. (*See* Doc. 118 at p. 6; Doc. 140 at p. 2). And again, Defendant would have a hard time establishing prejudice, insofar as *each* of the five drug and gun counts charged in the Indictment were deportable offenses, *see* 8 U.S.C. § 1227(a)(1)(B)-(C), Defendant pleaded guilty to just *one* offense, and, as a result, substantially reduced his sentencing exposure.

In sum, Defendant has not established counsel's deficient performance *or* resulting prejudice, and his claim fails.

### b. Counsel's alleged failure to allow Defendant an opportunity to review the PSR Addendum

Next, Defendant argues that counsel was deficient at sentencing for having "fail[ed] to afford [him] the opportunity to review and comment on the addendum to the presentence report." (Doc. 118 at p. 10).

The Sixth Amendment entitles a defendant to effective counsel at sentencing. *Tucker v. Day*, 969 F.2d 155, 159 (5th Cir. 1992). Again, however, to prevail on a sentencing-related claim, the defendant must establish deficient performance and resulting prejudice. *United States v. Pleitez*, 876 F.3d 150, 157 (5th Cir. 2017).

19

Accepting Defendant's allegations as true, and *assuming* that Counsel's performance was deficient in this regard, Defendant still cannot prevail because the content of the PSR Addendum did not factor into Defendant's sentence. The relevant (September 12, 2019) PSR Addendum sets forth Defendant's objection to paragraph 71 of the PSR—which details Defendant's "assets" for purposes of determining Defendant's ability to pay a fine—and the Probation Office's response to the same. (Doc. 107; *see* Doc. 102 at ¶¶ 71-72). At Defendant's October 9, 2019 sentencing hearing, the Court denied Defendant's objection, but, thereafter, did *not* impose a fine. (Doc. 113 at p. 6). Thus, Defendant cannot show any prejudice.

### c. Counsel's alleged failure to object to the 4-point Felony Facilitation Enhancement

Finally, Defendant complains that counsel should have objected at sentencing to the 4-point Felony Facilitation Enhancement because the three charged Counts of "distributing synthetic marijuana ... were dismissed and should not have been used to enhance [his] sentence." (Doc. 118 at p. 11).[4]

The Felony Facilitation Enhancement, U.S.S.G. § 2K2.1(b)(6)(B), increases a

---

[4] Defendant further objects that "the amount" of synthetic marijuana attributed to him—"one pound"—"is not [the] right weight." (Id.). Defendant's complaint is a nonstarter because this quantity—"one pound"—only appears in paragraph 30 of the revised PSR, which calculates Defendant's "cross reference" offense level (22). (See Doc. 102 at ¶¶ 30-31). However, Defendant's sentence was not based on his "cross reference" offense level. (See id. ¶ 31). Instead, Defendant's sentence was calculated according to the standard 24-point offense level for unlawful possession of a firearm *plus* the 4-point Felony Facilitation Enhancement for committing the offense "in connection with another felony offense"—*i.e.*, distributing any amount of synthetic marijuana. (See id. ¶¶ 28-29, 31). In other words, the weight of synthetic marijuana attributed to Defendant ultimately had no effect on Defendant's sentence and (as above) Defendant cannot show prejudice.

20

defendant's base offense level by 4-points "[i]f the defendant ... used or possessed any firearm or ammunition in connection with another felony offense." The Enhancement applies "if the firearm ... facilitated, or *had the potential of facilitating*, another felony offense." U.S.S.G. § 2K2.1 (Commentary, Application Note 14 (emphasis added)).

Here, Defendant's claim fails because, quite simply, his Felony Facilitation Enhancement is *not* based solely on the dismissed drug Counts—which, again, were alleged to have occurred on August 11, 2011 (Counts I, II) and April 7, 2014 (Count V). Rather, the Enhancement is also based on the synthetic marijuana discovered at the Joker on September 10, 2013, when agents executed the search warrant yielding the Baretta. (Doc. 102 at ¶¶ 10-19). Significantly, Defendant's Motion does *not* dispute that when agents entered the Joker on September 10, 2013, they observed multiple people attempting to purchase synthetic marijuana (from Defendant and others), and thereafter recovered 4,969 packets of synthetic marijuana from various locations throughout the store. Indeed, Defendant would be hard-pressed to dispute these facts, in light of his admissions in his first and second plea agreements, and at his first and second rearraignment hearings.

Based on Defendant's admissions, the undisputed facts set forth in the revised PSR, and the reasonable inferences drawn from the same, it would have been futile to object to the 4-point Felony Facilitation Enhancement. *Cf. United States v. Martinez*, 284 F. App'x 181, 182 (5th Cir. 2008) ("In light of the admitted factual basis supporting the plea, the unrebutted presentence report, and reasonable inferences

therefrom, the district court's factual finding that Martinez possessed a weapon in connection with his drug-trafficking crimes is plausible and thus not clearly erroneous."). "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994); *see also United States v. Jackson*, 53 F.3d 1282, 1995 WL 295951 *1 n.1 (5th Cir. 1995) (instructing that "counsel's refusal to advance frivolous objections … does not constitute ineffective assistance of counsel"). Defendant cannot prove deficient performance and his ineffective assistance claim fails.

### C. Certificate Of Appealability

Reasonable jurists would not debate the denial of Defendant's Motion, or the correctness of the Court's substantive rulings that Defendant has failed to make a substantial showing of the denial of a constitutional right. Accordingly, Defendant will be denied a certificate of appealability. *See United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997).

## III.  CONCLUSION

In sum, Defendant has failed to show that he is entitled to relief.  Accordingly,

**IT IS ORDERED** that Defendant's *pro se* **Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. 118)** be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability be and is hereby **DENIED**.

22

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant's related action No. 3:20-cv-00320-BAJ be and is hereby **TERMINATED** and **CLOSED** consistent with the denial of relief set forth herein.

Baton Rouge, Louisiana, this 13th day of December, 2022.

_____
**BRIAN A. JACKSON, JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

23